UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-12301-RGS

NORTICIA JEANETTE COATES

v.

DEPARTMENT OF ECONOMIC SECURITY
CHILD PROTECTIVE SERVICES, ET AL.

MEMORANDUM AND ORDER
December 11, 2012

STEARNS, D.J.

BACKGROUND

On or about December 5, 2012, plaintiff Norticia Jeanette Coates (Coates), a resident of Randolph, Massachusetts, filed a number of self-prepared documents seeking various relief against: (1) the Department of Economic Security Child Protective Services; (2) "Wayterra"; (3) United States Magistrate Judge David K. Duncan, and unidentified others. These documents relate to a closed civil action Coates filed in the District of Arizona (Phoenix Division) on April 11, 2012. That action stemmed from her arrest and the subsequent placement of her son in child protective services following her arrest. *See Coates v. Cassandra Wayterra, et al.*, Civil Action No. 2:12-cv-00787-DKD.

I.      Background of the Arizona Action

In that Arizona action, an Order issued by Magistrate Judge Duncan on June 13, 2012. *See* Order (Docket No. 13). That Order noted that Coates had sued defendants Cassandra Wayterra and Sandra E. Hester, both alleged employees of the Arizona Department of Economic Security, Division of Child Protective Services. In short, Coates appeared to allege that these defendants committed a "felony kidnaping" of her son, who, in fact, was taken into the custody of Child

Protective Services after the arrest of both Coates and the child's father.

On May 4, 2012, Coates filed an Amended Complaint in the Arizona action seeking the arrest of all the defendants involved in the alleged felony kidnaping. Notably, Magistrate Judge Duncan stated that Coates had previously been advised by the court that a private party could not seek to initiate criminal prosecution in a civil case. Coates was advised that if she believed a felony had occurred, she should contact a federal law enforcement agency, such as the Federal Bureau of Investigation. *Id.* (Docket No. 13 at 2).

Next, Coates's Amended Complaint alleged that the Glendale Child Protective Services violated Arizona state laws, administrative rules and regulations. Magistrate Judge Duncan noted that there was no federal court jurisdiction over a claim that this agency failed to follow state laws.

As an additional matter, Coates's Amended Complaint alleged that the Ottawa County (Michigan) Child Protective Services engaged in threats and harassment and that it falsely engaged in fraud and disseminated irrelevant documentation to the Phoenix Child Protective Services. As to this claim, Magistrate Judge Duncan also found no basis for federal or personal jurisdiction over a claim against a non-party located in Michigan.

Thereafter, Coates filed an "Amended Motion to Dismiss" which made allegations against the Maricopa Prosecutor County Attorney, for fraud to cover up stolen property (a firearm) that had been impounded by sheriffs. She also claimed that the arresting officers falsified their names and badge numbers. Magistrate Judge Duncan again found no basis for federal jurisdiction over the claim against a non-party to the case.

On May 29, 2012, Coates filed a Motion for a Preliminary Hearing in which she sought to inform the court about the problems with the Sunshine Shelter Group Home concerning alleged assaultive behavior of its staff on her son. She further complained about her false arrest in Maricopa

County, Arizona, and in Mecklenburg, North Carolina. Magistrate Judge Duncan found that none of the alleged conduct was attributable to any party in the case. In sum, Coates was advised she could not used the federal courts as a forum to address unrelated issues, and, in any event, it was apparent that Congress had not authorized the federal court to adjudicate the disputes raised by her. In light of the number of times Coates had to amend her pleadings and in light of the fact that Coates previously and repeatedly had been advised in other cases that she had filed in the District of Arizona that she must demonstrate federal court jurisdiction, Magistrate Judge Duncan dismissed the action without prejudice and without leave to amend, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Thereafter, Coates filed a Motion for Emergency Hearing Appeal, which the court construed as a Motion for Reconsideration. She also filed a "Motion to Proceedings." On July 16, 2012, Magistrate Judge Duncan issued another Order (Docket No. 20) noting that as part of her emergency motion, Coates submitted a copy of the Arizona Department of Economic Security, Division of Children, Youth and Families, Child Protective Services' Notice of Duty to Inform. Coates alleged that there was another child protective service that was criminally involved in order to cover up the kidnaping of her son. Additionally, in her Motion to Proceedings, she claimed her minor son was being held wrongfully against his will at the Sunshine Group Home and that there were numerous assaults by staff employees and other children. As part of that motion, Coates sought dismissal and judgment on the pleadings directed to the Durango Juvenile Court Detention Facility. Magistrate Duncan reasoned that Coates was seeking federal judicial review in connection with pending state matters. He then denied both the Motion for Reconsideration and the Motion to Proceedings.

On July 9, 2012, Coates filed a Motion to Proceeding in which she alleged that the Avondale Arizona Child Protective Services filed a false dependence report. She also alleged that the Glendale Police Department officers filed false reports at the Maricopa County prosecutor's office

3

using a false report from North Carolina sex offender registry, in order to convict an innocent minor under the age of 13.  In support, she submitted a Motion to Dismiss addressed to the Durango Juvenile Court Detention Facility and a copy of the National Sex Offender Registry for a named minor.  Finding that Coates again was seeking federal judicial review over pending state court matters, Coates's Motion to Proceeding was denied.  Coates was prohibited from making any further filings in the case unless authorized by the Federal Rules of Civil Procedure.

Thereafter, Coates relocated to Massachusetts, and filed seven civil actions on October 2, 2012, all re-filings of closed civil actions in the District of Arizona.  *See Coates v. Erickson*, Civil Action No. 12-11839-DPW; *Coates v. McCroskey*, Civil Action No. 12-11838-MLW; *Coates v. Curran*, Civil Action No. 12-11837-RWZ; *Coates v. Social Security Administration*, Civil Action No. 12-11836-DPW; *Coates v. Michigan Department of Human Services*, Civil Action No. 12-11834-DPW; *Coates v. Social Security Administration*, Civil Action No. 12-11832-GAO; *Coates v. JP Morgan Chase Bank, NA*, Civil Action No. 12-11831-RGS.  She filed the instant action by submitting random documents which are not entirely intelligible.

    II.    <u>The Instant Action</u>

First, she filed an unsigned "Motion Appeal & Transfer Case," (Docket No. 1) in which she requests that Chief Judge Wolf reconsider the Arizona action.  She claims the case was closed by Magistrate Judge Duncan, for unknown reasons and without any legal grounds for dismissal.  She asserts that the State of Arizona is in felony violation.  Additionally, she claims the Arizona state child protective services have unauthorized custody of her son without parental consent, "contrary to family law ruling child taken by illegal force abduction separation march 25th 2012 phoenix police and due to federal court litigation against Arizona child protective services."  Motion Appeal & Transfer Case at 1, ¶ 1.  She further alleges that the Arizona state child protective services are "in

4

violation extortion to elicit a ransom from the guardians for the child return." *Id.* at ¶ 2. Further, she claims the United States District Attorneys for New York and Washington, D.C. have jurisdiction, noting the legal guardian for her son and claiming that the State of Arizona continues to hold her child illegally under false pretenses. Apparently, Coates is unaware of the whereabouts of her child. She states: "[t]he Arizona state child protective services is in felony violation purposely under unlawful criminal actions purposely illegally placed our son in several group homes without an court order child does not have a criminal record period it is done under false pretense to keep the parents from knowing were there sons were about." *Id.* at 3, ¶ 1.

The next document Coates submitted was a federal form (AO 91) "Criminal Complaint" (Docket No. 2) against the Department of Economic Security Child Protective Services, in Avondale, Arizona. She asserts false arrest by the Phoenix Police and again asserts her child was kidnaped. She claims she and her husband have no idea of the whereabouts of her son. The Criminal Complaint was not signed, but contains the typewritten statement of the complainants as both Coates and her husband, David Fowler (also a litigant in this Court).

The third document submitted by Coates was a proposed Arrest Warrant, on a standard form (AO 442) (Docket No. 2-1) seeking the arrest of Kizzy Williams, Monica Lieske, Renae Hesselcine, and Jeff Slover. She describes the offense as, in part, "unauthorized practice of law falsely engaging in kidnappying without filing a case in CPS court...." *Id.* at 1. Attached to the proposed Arrest Warrant were various exhibits, including a pleading on behalf of Coates and her husband, entitled "Felony Complaint Felony Kiddnapping," (Docket 2-1 at 7) dated April 7, 2012 and directed to the District of Arizona (Phoenix Division). The pleading is not coherent, but appears to reiterate her claims that her child falsely was placed in a group home and assaulted two times. Another document is entitled "Legal Deposition" (Docket No. 2-1 at 8) in which Coates and her husband

claim they were told they had 90 days to get an apartment in order to have their son returned back to them. They allege that the child protective services worker knew that charges were dismissed against them, that they had not abandoned, neglected, or abused their son and that the worker knew that they did not have necessary funds to obtain an apartment. It appears as relief, they seek $75,000,000.00 with a 97% statutory interest rate for causing emotional distress to the family in falsely separating the parents from their biological son. Coates also submitted proposed Arrest Warrants for Officers Misner (Docket No. 2-2 at 19) and Bill Downey (Docket No. 2-3 at 21), both of the Glendale Police Department in Glendale, Arizona; and a proposed arrest warrant for Judge Linda H. Miles of the Durango Juvenile Court Detention Facility in Phoenix, Arizona (Docket No. 2-4 at 23).

Next, Coates attached a "Complaint of Judicial Misconduct or Disability" (Docket No. 3) against Judge Linda H. Miles. That misconduct complaint was accompanied by a separate statement of the facts in which Coates and her husband allege that Judge Miles committed a felony by illegally helping child protective services kidnap her minor son and by falsely allowing the Glendale police department officer to use a false police report from the State of North Carolina which erroneously listed on its sex offender registry a person that did not fit the description of their son. They also complain about several police officers concerning the assault of the minor, the filing of false charges and a domestic violence report, and harassment. The judicial misconduct complaint also reiterates the allegations against Cassandra Wayterra for discrimination and for allowing false charges to be filed against her son in the Maricopa juvenile courts.

Coates did not pay any filing fee for this action, nor did she seek a waiver thereof.

DISCUSSION

    I.    <u>The Filing Fee</u>

First, to the extent that Coates's pleadings could be construed to seek not only criminal action against various persons, but $75,000,000.00 in monetary damages or injunctive or declaratory relief (*i.e.*, civil relief), Coates would need to pay the $350.00 filing fee for civil actions in this Court, or seek a waiver thereof before proceeding further. *See* 28 U.S.C. § 1914(a) ($350.00 filing fee for all non-habeas civil actions); 28 U.S.C. § 1915 (proceedings *in forma pauperis*).

Generally, this court would permit a litigant an opportunity to satisfy the filing fee requirements; however, in this case, no further opportunity need be afforded to plaintiff, because this action is being dismissed *sua sponte*, for the reasons set forth below.

    II.    <u>Inherent Authority to Screen This Case</u>

This court has inherent authority to manage its own cases and to review a case to determine, among other things, whether or not it is frivolous as that term is used in legal parlance. *See Bustos v. Chamberlain*, 2009 WL 2782238, *2 (D.S.C. 2009) (noting that the court has inherent authority "to ensure a plaintiff has standing, that subject matter jurisdiction exists, and that a case is not frivolous") *citing, inter alia, Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307-308 (1989) (courts have authority to dismiss a frivolous or malicious lawsuits even in absence of any specific statutory provision); *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (where a § 1915 screening was not applicable because a *pro se* party paid the filing fee, the court still had inherent authority "wholly aside from any statutory warrant" to act *sua sponte*); *and Rolle v. Berkowitz*, 2004 WL 287678, *1 (S.D.N.Y. 2004) *(sua sponte* dismissal in fee-paying *pro se* case is warranted where the claims presented no arguably meritorious issue to consider). *See also Gaffney v. State Farm Fire and Cas. Co.*, 294 Fed. Appx. 975, 977 (5th Cir. 2008) (unpublished

7

decision stating: "[t]his court has on numerous occasions recognized the inherent authority of a district court to dismiss a complaint on its own motion for failure to state a claim."); *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) ("district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources").

In connection with the screening conducted here, Coates's pleadings are construed generously because she is proceeding *pro se*. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education*, 209 F.3d 18, 23 (1st Cir. 2000).

### III. Plaintiff's Claims Seeking Criminal Prosecution and Arrest are Frivolous, Malicious, Abusive, and/or Vexatious

Given Coates's litigation history in the District of Arizona, as noted above, it is patently clear that the re-filing of the Arizona case in this court is frivolous, malicious, abusive, and/or vexatious. Of significance in this determination is the fact that she has been advised more than once that a private citizen may not initiate criminal prosecution of another. Her attempt to relitigate the issue in this court despite her prior warnings cannot be brooked.

Accordingly, plaintiff's Motion Appeal and Transfer Case (Docket No. 1) will be DENIED and plaintiff''s Criminal Complaint (Docket No. 2) will be DISMISSED. No arrest warrants shall issue. Further, Coates is PROHIBITED from filing any further requests in any form for criminal prosecution of another. Coates is WARNED that failure to comply with this directive may result in the imposition of sanctions, including an Order enjoining plaintiff from filing a lawsuit without prior permission of the court.

Additionally, to the extent plaintiff asserts claims of felony kidnaping, harassment, fraud,

8

false arrest, or other wrongdoings by employees of any Child Protective Services or Arizona Police Officers, these assertions in this court reflect a pattern of abusive behavior, particularly where Magistrate Judge Duncan dismissed her action without leave to amend. Rather than appealing his rulings, plaintiff simply thought to try again in this court. Further, it is crystal clear that this court lacks personal jurisdiction over those persons referenced in plaintiff's pleadings and that the exercise of personal jurisdiction would violate constitutional due process requirements. All the actions of which plaintiff complains did not occur in Massachusetts. Simply put, this District Court is not the proper forum to address plaintiff's disputes concerning the matters relating to her arrest and the custody or placement of her son.

In any event, if this court had personal jurisdiction over any of the persons referenced in plaintiff's pleadings, this court lacks jurisdiction to review any civil claims (*i.e.*, the claims other than for criminal prosecution, which will be dismissed pursuant to the discussion above).

    IV.    <u>Jurisdictional Bars to Civil Claims</u>

        A.    <u>The *Rooker-Feldman* Doctrine</u>

The status of Coates's state court cases are unclear; however, to the extent that she is seeking federal review of any final decision of a state court (such as Judge Miles's rulings), this court lacks jurisdiction to conduct such review, pursuant to the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is a distillation of two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision. *See Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 65 (1st Cir. 2008) (stating that the *Rooker-Feldman* doctrine, "in broad terms,

deprives the district court of subject matter jurisdiction over a final judgment of a state court"); *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 68 (1st Cir. 2008) (the doctrine "bars parties who lost in state court from 'seeking review and rejection of that judgment' in federal court.'") quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005); *see also Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 126 (1st Cir. 2005) ("Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action.") quoting *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir. 1996).

      B.      The Abstention Doctrine

To the extent that Coates requests this court to interfere with any <u>pending</u> state court litigation involving her son or her parental rights, her requests fair no better. This court will abstain from judicial review of any pending state case.

The federal courts have long recognized the "fundamental policy against federal interference with state criminal proceedings." *Younger v. Harris*, 401 U.S. 37, 46 (1971); *In re Justices of the Superior Court Dept. of the Massachusetts Trial Court*, 218 F.3d 11, 16 (1st Cir. 2000). *See also Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237-38 (1984) (federal court abstention from jurisdiction appropriate where "federal claims could have been or could be presented in ongoing state judicial proceedings that concern important state interests."). The *Younger* abstention doctrine has been applied to other non-criminal proceedings.

A federal court must abstain from reaching the merits of a case over which it has jurisdiction so long as there is: (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding (or, at least, instituted prior to any substantial progress in the federal proceeding); that (2) implicates an important state interest; and (3) provides an adequate opportunity for the plaintiff to raise the

claims advanced in his federal lawsuit. *See Brooks v. New Hampshire Supreme Court*, 80 F.3d 633 (1st Cir. 1996) citing *Middlesex County Ethics Comm. v. Garden State Bar Ass"*, 457 U.S. 423, 432 (1982).

Here, all three prongs of the test warranting *Younger* abstention in this case.

### C. Domestic Relations Exception to Jurisdiction

Relatedly, to the extent that plaintiff is seeking to obtain custody of her minor son, or obtain some other injunctive or declaratory relief relating to the placement of her son in the care of the Defendant Child Protective Services or with a legal guardian or otherwise, this court would abstain from interfering with the state cases that involve domestic matters such as child custody, adoption, visitation, support issues and parental rights because of the domestic relations exception to jurisdiction.

The premise behind the domestic relations exception is that federal courts should not interfere in domestic disputes, including disputes over marital property or the custody of children, because state courts have developed the proficiency and specialized resources necessary to handle such cases. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The *Ankenbrandt* Court held that "the domestic relations exception, as articulated by this Court ... divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id.* at 703. *See Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) ("[The domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees."). Plaintiff's claims concerning her son clearly fall within the domestic relations exception. Were this court to exercise jurisdiction, it would be required to investigate the needs of the child as well as plaintiff's current capabilities as a family provider. The state courts are in the best position to serve the family interests.

As an additional matter, the presence of family-related matters in this action argues strongly for the propriety of total abstention. "The First Circuit has stated that even if a case is not strictly fit for the application of the domestic relations exception, principles of comity wold still make abstention appropriate." *Mojica v. Nogueras-Cartagena*, 573 F. Supp. 2d 520, 523 (D. P.R. 2008) (citing *Armstrong v. Armstrong*, 508 F.2d 348 (1st Cir. 1974); *see Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir. 1981) ("[A]lthough the exception has been narrowly confined, we and other courts of appeals, have held that federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception."); *see LaMontagne v. LaMontagne*, 394 F. Supp. 1159, 1169 (D. Mass. 1975) (holding that reasons of comity and common sense made abstention appropriate where, although father of minor child sued mother, probation officers and others alleging violation of Eighth and Fourteenth Amendment rights, the action was essentially a domestic relations contest).

In sum, Coates must pursue her domestic cases elsewhere; she may not attempt to open second fronts in the lower federal courts when disappointed by ongoing state court proceedings.

V.   The Judicial Misconduct Complaint

Coates complains of the rulings by Judge Miles of the Durango Juvenile Court Detention Facility in Phoenix, Arizona. This court is not the proper forum in which to lodge a Judicial Misconduct Complaint against a judge from another state, with no association to the District of Massachusetts whatsoever.

Accordingly, the Judicial Misconduct Complaint will be <u>DISMISSED</u> without prejudice.

CONCLUSION

Based on the above, it is hereby Ordered that:

1. Plaintiff's Motion Appeal and Transfer Case (Docket No. 1) is <u>DENIED</u>;

2. Plaintiff's Criminal Complaint (Docket No. 2) is <u>DISMISSED</u>;

3. Plaintiff's requests for arrest warrants to issue are <u>DENIED</u>;

4. Plaintiff is <u>PROHIBITED</u> from filing any further requests in any form seeking the criminal prosecution of another;

5. Plaintiff is <u>WARNED</u> that failure to comply with this court's directives could result in the imposition of sanctions;

6. To the extent plaintiff asserts civil claims for monetary damages, injunctive relief, or declaratory relief, her requests are <u>DENIED</u>, and any civil claims are <u>DISMISSED</u>;

7. Plaintiff's Complaint of Judicial Misconduct or Disability (Docket No. 3) is <u>DISMISSED</u> without prejudice;

8. This action is <u>DISMISSED</u> in its entirety. A separate Order of Dismissal shall enter, closing this case on the Court's docket.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE